364 S.E.2d 250

**In the Matter of Justice
Richard NEELY.**

**No. 17273.**

Supreme Court of Appeals of
West Virginia.

Dec. 10, 1987.

S. Clark Woodroe, Charleston, for petitioner.

Charles R. Garten, Charleston, for respondent.

BROTHERTON, Justice:

This judicial disciplinary proceeding arises from a determination by a majority of the Judicial Investigation Commission that probable cause existed to file a complaint with the Judicial Hearing Board against the Honorable Richard Neely, Justice of the West Virginia Supreme Court of Appeals, charging him with violations of Canon 1 and Canon 2A of the Judicial Code of Ethics.[1]

The complaint alleged that Justice Neely required his staff to perform personal services, including babysitting, as a condition of employment, and that he required his staff to be available on an around-the-clock basis. The Hearing Board, after making certain findings of fact and conclusions of law, recommended by a four-to-one vote, with one member abstaining, that the complaint against the respondent be dismissed pursuant to Rule III(C)(13)(a) of the West Virginia Rules of Procedure for Handling of Complaints Against Justices, Judges and Magistrates. The recommendation was based on the Board's finding that Justice Neely's actions were not illegal, immoral, or unethical, as defined by the Judicial Code of Ethics.

Pursuant to Rule III(D) of the Rules of Procedure, the recommendation of the Board has been submitted to the West Virginia Supreme Court of Appeals for final disposition. The recommendation, the complaint, the findings of fact, conclusions of law, and briefs, together with oral argument, were presented to this Court. After an independent review of the record,[2] we disagree with the Board's recommendation, and issue an admonition concerning the conduct complained of.

The respondent, Justice Neely, hired a private secretary on or about June 20, 1983. Prior to her employment, Justice Neely indicated to the secretary that her job would include caring for his infant son when asked to do so, and that failure to perform that task could result in dismissal. The secretary, in addition to the traditional secretarial duties required by her contract of employment, did care for the respondent's son on at least eleven occasions in a twenty-seven month period, once for more than seven days. She babysat both in Justice Neely's home and in her own home. Sometime in June of 1985 Justice Neely again asked the secretary to care for his son. This time she indicated that she would be unable to continue babysitting, because it was affecting her health. The respondent informed her that child care was part of her employment contract and that she would have a period of time in which to look for other employment if she could not fulfill that part of the contract.[3]

---

1. This case was heard by a panel consisting of the author and the Honorables Callie Tsapis, Frank E. Jolliffe, Margaret L. Workman and Robert C. Halbritter. The four circuit court judges were assigned to this case by the Chief Justice to replace four justices of the Supreme Court of Appeals who recused themselves from this matter. *See* W.Va. Const. art. VIII, § 2.

2. "The Supreme Court of Appeals will make an independent evaluation of the record and the recommendations of the Judicial [Hearing] Board in disciplinary proceedings." Syl. pt. 1, *West Virginia Judicial Inquiry Comm'n v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980).

3. The complaint filed with the Judicial Investigation Commission included minor allegations concerning other personal tasks, but the focus

The Judicial Investigation Commission contended before the Hearing Board and before this Court that requiring personal staff to perform personal services during and after working hours, and making such services a condition of continued employment, given the duration and frequency of the required service in this case, violated Canons 1 and 2A of the Code of Judicial Ethics by creating the appearance of impropriety and by bringing into question the integrity of the judiciary. The respondent's answer to the charges was that as a justice of the West Virginia Supreme Court of Appeals he is on call twenty-four hours a day. He asserts that it was necessary to have someone to care for his young son at times when he and his wife were away from the home, ordinarily in connection with his duties as a judge. It is Justice Neely's position that utilization of a state-salaried secretary for this purpose promotes efficient administration of justice. He points out that the secretary understood her duties when she accepted employment as his private secretary, and that she was well paid and received considerable leave time.

Respondent argues to the Court that his actions did not violate the Code of Judicial Ethics primarily for two reasons. First, his requirement that an employee perform certain personal services does not differ from the actions of many other elected or appointed governmental officials of the State of West Virginia, including previous Supreme Court justices, and it serves to promote the efficient administration of justice. Second, the secretary is a private secretary, and the definition of "private secretary" allows for child care if the employer happens to have young children who require supervision in order for the employer to perform his duties.

## I.

■ We address first the argument that other officials in state government have personal staff performing similar func-. tions. The judicial branch of government is separated from the other branches of State government by more than the provisions of the West Virginia Constitution. While all officials take an oath of office, no other branch of government is governed by a code of ethics, the violation of which could result in suspension from office. Some elected or appointed officials may have certain benefits of their offices, by custom, statute or contract, but we are not concerned in this action with what other officials of this State may or may not do, or whether what they do is right or wrong. This action concerns only the judicial branch of government which, because of its code of ethics, is held to a higher standard of performance. What members of other branches of government may or may not have done over a period of time which created a course of conduct should be considered only as a possible factor in mitigation of punishment. It does not affect whether the conduct of the respondent violated the Code of Judicial Ethics.

■ With regard to prior Supreme Court justices, Justice Neely presented evidence by affidavit of then-Clerk of the Supreme Court, George W. Singleton, that previous justices have assigned personal duties to their secretaries and staff, including completing income tax returns and typing term papers for a justice's children. These tasks differ in character and degree from caring for children in the home. A secretary can complete tax forms or type papers while in the office, during regular working hours, and without interference with duties such as answering the telephone or typing of a more official nature. A secretary who babysits, in her home or in the justice's home, is not concurrently available to assist the justice in the performance of his duties. Further, no assertion has been made that failure to perform these personal duties would have resulted in the secretaries being fired. A judge or justice may, without creating the appearance of impropriety, oc-

---

of the complaint was the babysitting services required of the private secretary as part of her employment contract. As noted below, a private secretary and other personal staff authorized for judges and justices may be asked to perform reasonable personal services related to the work of the courts, and we do not, therefore, consider the other allegations in detail.

casionally ask members of his personal staff to voluntarily perform personal tasks that interfere only minimally with performance of their other duties, but this Court will not condone the actions of a judge who requires extensive personal tasks as a condition of employment.

The second and more persuasive of the respondent's answers to the complaint of judicial misconduct is the contention that the duties the secretary performed of a personal nature were duties that fit within her job description. The judicial branch of government is guided in its employment of personnel by a Policy and Procedures Manual promulgated by the West Virginia Supreme Court of Appeals on July 1, 1976. The manual defines the work of a "Secretary (Supreme Court)" as follows:

*Definition of Work*

This is highly responsible legal secretarial work of a sensitive and confidential nature. Employees of this class work directly for a Supreme Court Justice.

*Examples of Work Performed*

* Serves as private secretary to a Supreme Court Justice.

* Takes dictation or utilizes a dictating machine to transcribe letters, orders, opinions and other legal correspondence.

* Prepares letters, memoranda and other correspondence relating to a variety of legal matters.

* Maintains files as necessary.

* Answers all incoming telephone calls.

* Schedules and confirms appointments as required.

* Types for the Justice's Law Clerk as necessary.

* Performs related work as required.[4]

Although "private secretary" is only one of eight examples of work to be performed under the general definition of "legal secretarial work of a sensitive and confidential

nature," the respondent focuses on that term at some length. He has provided the Court with both dictionary and case law definitions intended to illustrate that the babysitting requirement was within the scope of his secretary's official duties. Justice Neely asserts, justifiably, that if the official regulations authorize use of a judicial secretary to babysit, he can hardly be said to have acted improperly.

■ The cited cases illustrate that private employers have used their private secretaries to oversee interior decorating, organize dinners, make travel arrangements, sign checks, write speeches, attend rallies, take care of banking transactions and personal records, and supervise household staff.[5] Even this wide variety of personal services does not in our opinion require the inclusion of babysitting as a duty necessarily implied by the term "private secretary." More importantly, the secretary in this case was an employee of the State of West Virginia, employed by the justice to assist him in the performance of his public duties. Even if the personnel manual had designated her a private secretary alone, she would still have been first a public employee. A private secretary to a justice or a judge cannot be governed by the definition of a private secretary in private industry, but must be looked at as a secretary in a governmental setting. The scope of her duties must be limited by the purposes for which the taxpayers have provided a justice with a secretary.

■ Article VIII, section 7 of the Constitution of this State sets forth that justices, judges and magistrates shall receive salaries fixed by law and expenses as provided by law. We recognize that the rewards of public service are not monetary. Justices are not drafted into service, however, but choose to serve. Although it may be difficult to respond to the demands of a public career without incurring substantial per-

---

4. The only references to "private secretary" in the personnel manual are as examples of work to be performed by secretaries for justices of the supreme court and for judges of the circuit courts. The term "private secretary" is not defined.

5. *See Saunder v. Baryshnikov,* 110 A.D.2d 511, 487 N.Y.S.2d 51, 52 (1985); *Telles v. Vasconcelos,* 417 S.W.2d 491, 492 (Tex.Civ.App.1967); *Woodward v. United States,* 208 F.2d 893, 896 (8th Cir.1953); *Boland v. Love,* 222 F.2d 27, 30 (D.C.Cir.1955).

sonal expenses, there are no provisions for any other emoluments for active members of the judiciary. It is a well settled principle that taxpayers expect an office holder to be provided with a staff to help perform official duties. A public official cannot, however, use public employees to perform private services which directly or indirectly benefit the official. *See, e.g., Matter of Carrillo,* 542 S.W.2d 105, 112 (Tex.1976) (judge's use of public employees and equipment on judge's ranch); *In re Troy,* 364 Mass. 15, 306 N.E.2d 203, 230 (1973) (judge's use of court officer as bulldozer operator on project in which judge had interest). By requiring his secretary to babysit, Justice Neely employed public resources to discharge a function traditionally assumed by parents, or by household help remunerated by parents.

■ The real question here is whether a private secretary under any definition, who is first a public employee, can under any type of contract be required to perform personal services as a condition of employment.[6] Care of one's infant child is a service that is private in nature. It falls beyond the scope of duties for which the taxpayers have provided staff to members of the judiciary. No matter how arduous the duties of a justice or judge may be, and how time-consuming, they must be performed with the help of the staff provided, and tasks of a personal nature remain personal responsibilities.

## II.

■ Canon 1 of the Judicial Code of Ethics provides:

*A Judge Should Uphold the Integrity and Independence of the Judiciary*

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity

and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

The facts giving rise to the complaint in this case do not call into question the integrity and independence of the judiciary. There is no allegation that Justice Neely did not deal fairly with his secretary, that he attempted in any way to conceal the arrangement from the public, or that his use of a secretary to babysit in some way evidenced a bias against women. Therefore, this Court finds that the respondent did not violate Canon I of the Judicial Code of Ethics.

■ Canon 2A provides:

*A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities*

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

The official commentary to Canon 2 elaborates as follows:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must, therefore, accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

In this canon, the drafters recognized that the public expects a judge to be a model of integrity and a paradigm of "proper" conduct. It is imperative to our system of justice that this model be untarnished by even the appearance of impropriety. A loss of confidence in the judiciary can only lead to diminished respect for the law. "If gold will rust, what shall iron do?"[7]

---

**6.** The situation would be different, of course, if the Constitution or statutes provided household

or other specific personal staff for a public official.

**7.** "That if gold ruste, what shal iren do?

■ It is the opinion of this Court that Justice Neely's course of conduct violated this Canon, and must be sanctioned. As the public outcry over this case aptly demonstrates, firing a secretary for refusal to babysit *at least* creates the appearance of impropriety. Care of one's children in our society to date is the responsibility, financial and otherwise, of parents, not the State. Although the integrity of the judicial process has not been compromised, it is improper for a judge to take advantage of his position to reap a personal benefit—or even to appear to do so.[8] The judges of the circuit courts, whose secretaries' duties also include functioning as "private secretaries," pay for child care from their own pockets, as do other public employees. Canon 2A recognizes the need to maintain public confidence in the individuals who comprise the judiciary. While the Court is convinced that Justice Neely considered his actions legal, moral, and proper in every respect, it is the opinion of the Court that the acts complained of constituted improper use of a public employee. We conclude that the respondent's conduct violated Canon 2A, and he is subject to sanction. A judge or justice violates Canon 2A of the Judicial Code of Ethics when he requires his secretary to care for his child as a condition of employment, because such action creates the appearance of impropriety and undermines public confidence in the judiciary.

The Court does therefore refuse the recommendation of the Judicial Hearing Board and does sanction the respondent by an admonition that his conduct was improper in requiring a secretary, as a condition of employment, to perform certain personal services for the respondent or face discharge. This admonition, while the lightest of the sanctions provided as penalties for

violation of the Judicial Code of Ethics, is done as a warning to all justices, judges and magistrates that any future complaints involving similar facts will result in a greater penalty.[9]

FRANK E. JOLLIFFE, Circuit Judge, joins in the opinion, but would sanction the respondent with public censure, believing that the conduct of the respondent merited more than the mere sanction of an admonition.

MARGARET L. WORKMAN, Circuit Judge, concurs in part and dissents in part and reserves the right to file an opinion.

MARGARET L. WORKMAN, Circuit Judge, concurring and dissenting.

I concur with the majority that Justice Neely violated Canon 2A of the Judicial Code of Ethics and would join Justice Jolliffe in publicly censuring Justice Neely for that violation. However, I must take exception to some of the conclusions in the majority's written opinion.

In addition, I dissent with the majority's determination that Justice Neely did not violate Canon 1 of the Judicial Code of Ethics, and conclude that he did violate Canon 1.

The most significant disagreement I have with the majority opinion is the language which attempts to establish a standard for tasks a judge or justice may properly call upon public employees to perform:

"... A judge or justice may, without creating the appearance of impropriety, occasionally ask members of his personal staff to voluntarily perform personal tasks that interfere only minimally with performance of their other duties ..."

For if a preest be foul, on whom we truste,
No wonder is a lewed man to ruste; ...."
G. Chaucer, *Prologue to The Canterbury Tales,* I Oxford Anthology of English Poetry 11 (1979).

8. The actual text of Canon 2A relates specifically to actions that compromise, or appear to compromise, judicial integrity or impartiality. We realize that this is not such a case. The title and commentary to Canon 2A indicate, however, that *any* kind of improper conduct can under-

mine public confidence in officials who should be above reproach. Reading the Canon in its entirety, we must enforce this broader proscription.

9. We note further Justice Neely's resignation as chief justice at the time the complaint in this case was filed. His action constituted a self-imposed punishment, and the Court has considered it as a factor in mitigation of the sanction imposed here.

Discussions of this case by this panel make it perfectly clear what sorts of innocuous personal tasks were envisioned by the majority in its adoption of this language. Probably every judge and justice has on occasion asked one of the public employees under his direction to pick up his lunch or a cup of coffee, or to do some other simple task that hopefully all we human beings might on occasion do for one another as an everyday human courtesy. Likewise, most judges and justices hopefully have extended to public employees under their direction similar human courtesies.

While the language of the majority may have intended to exempt those types of situations, it goes much further, establishing a legal standard for determination of all cases of this type. The generality of the majority's language opens a veritable Pandora's Box of problems by leaving so much to subjective interpretation. It is not difficult to envision examples of clearly unethical conduct which might fall within the parameters of the majority's exemption. It is not the function of this Court to articulate a general rule or legal standard as to what is or is not proper. That is the purpose of our Judicial Code of Ethics. The purpose of this Court is limited to review of the record of specific instances of alleged misconduct, application of the Judicial Code of Ethics to the facts and circumstances surrounding such allegations, determination of whether the acts complained of constitute an ethical violation, and application of appropriate sanction.

Furthermore, the very nature of the employer/employee relationship is such that requests by the employer of the employee to perform tasks implicitly lack the voluntariness referred to by the majority.

A second but related portion of the majority's opinion with which I must disagree relates to the issue of whether alleged conduct of previous justices with respect to requiring the performance of personal tasks by public employees in any way excuses or exonerates the conduct of Justice Neely.

In support of his contentions, Justice Neely submitted an affidavit of former Supreme Court Clerk George W. Singleton, the crux of which was that two previous unnamed justices had assigned personal duties to their secretaries and staff, including completing income tax returns and typing term papers for a justice's children. By use of the following language, the majority implicitly determined that these actions were not improper:

"... A secretary can complete tax forms or type papers while in the office, during regular working hours, and without interference with duties such as answering the telephone or typing of a more official nature. A secretary who babysits, in her own home or in the justice's home, is not concurrently available to assist the justice in the performance of his duties ..."

I find this conclusion objectionable for several reasons:

1. The majority's language once again seems to suggest a general rule and a dangerous one; that is, that so long as a secretary performs personal tasks during regular working hours and is concurrently available for her official duties, that such personal tasks can be required.

2. It is outside the scope of this Court's authority in this proceeding to make any implicit determination of the propriety or impropriety of any conduct not the subject of this proceeding. In addition, the sworn statement of only one individual (albeit a highly respected person) with neither names, details as to the facts and circumstances of such claimed conduct, nor any opportunity for response to those charges can hardly form a sufficient basis for a determination as to the propriety or impropriety of such conduct in any proceeding.

3. Even if unethical conduct by any previous or present justice can be proven, the fact that such unethical conduct has occurred on the part of others cannot be used to justify the conduct in this case. The majority opinion fails to make that clear.

I must also part ways with the majority in its determination that Justice Neely did

not violate Canon 1 of the Judicial Code of Ethics.

Canon 1 provides:

### A Judge Should Uphold the Integrity and Independence of the Judiciary

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

The majority believes the conduct under examination here did not call into question the integrity and independence of the judiciary. I disagree.

The conduct of Justice Neely in requiring personal services of his secretary in the form of babysitting so clearly violates the Code's requirement of "high standards of conduct" that extensive discussion seems to me not to be required.

Integrity in all actions done in a judicial decision-making capacity is of course vital. But integrity and high standards of conduct also relate to the much broader issue of faithfully adhering to the public trust which resides with every judge and justice in all other public conduct.

The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity and efficiency of the members of the judiciary and the system of justice. *In the matter of Magistrate Kenneth L. Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985).

It is for this reason that I must depart from the majority's conclusion that admonition is the proper sanction and instead hold that Justice Neely should be publicly censured for his conduct.

The difference in the two sanctions is semantic but significant. Webster's New Collegiate Dictionary defines "admonition" as "1: gentle or friendly reproof 2: counsel or warning against fault or oversight"; and "censure" as "1: a judgment involving condemnation 2: the act of blaming or condemning sternly 3: an official reprimand."

Respect for the court system in West Virginia is in need of revitalization. A public perception that the official response to this conduct on the part of one of our brethren is nothing more than a gentle reproof will not bolster public confidence in the courts.

The facts and circumstances of this case require official condemnation.