489 S.E.2d 783

**In the Matter of John R. RICE, Magistrate for Cabell County.**

**No. 23159.**

Supreme Court of Appeals of West Virginia.

Submitted April 22, 1997.
Decided July 8, 1997.

**402**

Charles R. Garten, Judicial Disciplinary Counsel, Charleston, for Judicial Investigation Commission.

John R. Mitchell, Patrick L. Cottrell, Mitchell & Murray, Charleston, for Respondent.

PER CURIAM:

This judicial disciplinary proceeding is before this Court pursuant to Rule III. D. of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters. This proceeding was initiated by the Judicial Investigation Commission (hereinafter "Commission") against Magistrate John R. Rice of Cabell County. The Commission charged Mr. Rice with violation of Canon 2A and 2B of the Code of Judicial Conduct.[1] The West Virginia Judicial Hearing Board (hereinafter "Board"), found that Mr. Rice had violated Canons 2A and 2B by contacting an arresting officer and prosecuting attorney concerning an action pending against Mr.

---

**1.** Canon 2A, in its entirety, provides: "A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Canon 2B provides: "A judge should not allow his family, social, or other relationships to influ-

ence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness."

Rice's son-in-law. The Board recommended that Mr. Rice be admonished and required to pay the costs of the proceedings. After an independent review of the record, we adopt the recommendations of the Board.

## I.

On April 26, 1995, James H. Preece, the son-in-law of Mr. Rice, was arrested for public intoxication and possession of a controlled substance, marijuana. He was thereafter arraigned in the Cabell County Magistrate Court and bail was set by Magistrate Brenda Chapman. On April 28 or 29, 1995, Mr. Rice spoke with the arresting officer, Darren R. Dempsey of the Huntington Police Department. Mr. Rice inquired concerning the arrest and asked if the arresting officer could help Mr. Preece. Officer Dempsey subsequently spoke to the prosecutor regarding possible dismissal of the charges against Mr. Rice's son-in-law.

Mr. Rice also contacted the assistant prosecutor, James Smith, concerning the validity of the police search. Mr. Rice did not disclose the fact that the defendant was his son-in-law. On May 1, 1995, the charges against Mr. Preece were dismissed. In a "Notes and Comments" section of file, Assistant Prosecutor Smith wrote "dismissed per officer's agreement per Magistrate Rice." [2]

On August 25, 1995, the Commission filed a complaint alleging that Mr. Rice had contacted an arresting officer concerning charges of public intoxication and possession of a controlled substance against his son-in-law and that such activity constituted a violation of Canons 2A and 2B of the Code of Judicial Conduct. On November 20, 1995, the Commission found probable cause to charge Mr. Rice with a violation of Canons 2A and 2B, and a hearing before the Board was conducted on June 7, 1996.

2. Mr. Smith later testified that he did not intend this comment to suggest that the dismissal had been accomplished as a favor to Mr. Rice. The notation was apparently intended only to serve as a reminder to Mr. Smith or others regarding the circumstances of the case and to reflect that Officer Dempsey had no objection to dismissing the charges.

3. Rule 4.5 of the Rules of Judicial Disciplinary Procedure states: "In order to recommend the

The Board, on August 6, 1996, found that Mr. Rice had violated Canons 2A and 2B by contacting the arresting officer and the prosecuting attorney. The Board reasoned that the mere fact that the contact was made presents the appearance that Mr. Rice attempted to utilize the prestige of his office to gain favor for a member of his family. The Board recommends that Mr. Rice be admonished and required to pay the costs of the proceedings.

## II.

In syllabus point one of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we explained the " '[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syl. pt. 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980)." Syllabus point four of *Pauley* instructs: "Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.' " [3]

In syllabus point one of *In the Matter of Phalen*, 197 W.Va. 235, 475 S.E.2d 327 (1996), we explained that " '[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice.' Syllabus, *In the Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985)." *See also In the Matter of Hey*, 192 W.Va. 221, 228, 452 S.E.2d 24, 31 (1994)

imposition of discipline on any judge, the allegations of the formal charge must be proved by clear and convincing evidence." *See also* syl. pt. 1, *In the Matter of Browning*, 197 W.Va. 75, 475 S.E.2d 75 (1996); syl. pt. 1, *In the Matter of Hey*, 192 W.Va. 221, 452 S.E.2d 24 (1994); syl. pt. 1, *In the Matter of Twyman*, 190 W.Va. 191, 437 S.E.2d 764 (1993); syl. pt. 1, *In the Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992).

("[j]udicial disciplinary proceedings are subjects of the highest public concern").

The Commentary to Canon 2A illuminates the intent of its drafters, as follows:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges.... A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

Canon 2B prohibits conduct which utilizes the prestige of judicial office to advance private interests of the judge or others. In *In the Matter of Boese,* 186 W.Va. 46, 410 S.E.2d 282 (1991), we found an ethical violation in a magistrate's attempt to use her judicial position to threaten her ex-spouse with arrest for driving under the influence. *Id.* at 49, 410 S.E.2d at 285. We explained as follows:

Although Magistrate Boese's reaction to the unpleasant situation she was confronted with may be understandable, her actions fell below the high standards of conduct required of judges "so that the integrity and independence of the judiciary may be preserved," thus, violating Canon 1. Moreover, Magistrate Boese failed to "conduct [herself] at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" in violation of Canon 2A, and allowed her "relationships to influence [her] judicial conduct" as prohibited by Canon 2B.

*Id.*

The Commentary to Canon 2B provides guidance here insofar as it admonishes that "[j]udges should distinguish between proper and improper use of the prestige of office in all of their activities." (Emphasis added.) "It represents a fundamental abuse of power that seriously undermines public confidence in the integrity and impartiality of the judiciary." *Hey,* 193 W.Va. at 577, 457 S.E.2d at 515.

As we stated succinctly in *In the Matter of Neely,* 178 W.Va. 722, 727, 364 S.E.2d 250, 255 (1987), "it is improper for a judge to take advantage of his position to reap a personal benefit—or even to appear to do so." In syllabus point seven of *Matter of Bennett,* 403 Mich. 178, 267 N.W.2d 914 (1978), the court noted that "a judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench."

■ In the present case, Mr. Rice contends that the Board lacked clear and convincing evidence of violation of Canons 2A and 2B. However, the Board presented the testimony of the arresting officer regarding Mr. Rice's request for assistance in his son-in-law's case and the testimony of the prosecuting attorney regarding questions posed by Mr. Rice regarding the arrest and subsequent search. These issues were discussed with the prosecuting attorney without a disclosure by Mr. Rice that the defendant was his son-in-law.

■ Mr. Rice makes numerous references to the fact that he was not acting in an official capacity during the pendency of his son-in-law's case. These references illuminate Mr. Rice's misapprehension regarding the application of the Code of Judicial Conduct. In his brief, Mr. Rice states that he "was not necessarily acting in a judicial capacity, but rather out of genuine concern for a member of his family." While this may be true, it does not shield him from discipline. As we indicated above, the rules do not become inoperative when the judicial officer ceases official conduct. We find no inadequacy in clear and convincing evidence of violation.

Upon our independent evaluation of the record, the arguments of counsel, and the recommendations of the Board, we find that the allegations against Mr. Rice have been proven by clear and convincing evidence.

Admonished and required to pay costs.