495 S.E.2d 548

**In the Matter of Rick REESE, Magistrate for Taylor County.**

No. 23546.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1997.

Decided Oct. 24, 1997.

Charles R. Garten, Judicial Disciplinary Counsel, Charleston, for the Judicial Investigation Commission.

George F. Fordham, Clarksburg, for Rick Reese.

PER CURIAM: [1]

■ This judicial disciplinary proceeding was submitted to this Court, pursuant to Rule 4.8 of the West Virginia Rules of Judicial Disciplinary Procedure, for review of the record and the November 19, 1996, recommended disposition of the Judicial Hearing Board (hereinafter Board) with regard to a complaint filed with the Judicial Investigation Commission. The complaint charges the respondent, Rick Reese, Magistrate for Taylor County, with violations of Canons 1, 2A, 2B, 3A, 3B(2) and 3B(7) of the West Virginia

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 606 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely *obiter dicta*.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

Code of Judicial Conduct. The Board concluded that Magistrate Reese violated Canons 2A, 2B and 3B(7). The Board recommends admonishment.

This Court has before it the recommendation, all matters of record, including a transcript of the evidentiary hearing conducted by the Judicial Hearing Board, and the briefs and argument of counsel. For the reasons discussed below, this Court adopts the November 19, 1996, recommendation of admonishment.

## I

The charges against Magistrate Reese arose out of his involvement in a criminal case filed by the State of West Virginia against Rick Severe in May 1995. Mr. Severe was charged with second offense DUI and was arraigned before Magistrate Reese. Subsequently, Magistrate Reese was phoned by his cousin, Virgil Williams, who was also Mr. Severe's uncle by marriage. Mr. Williams wanted to discuss the charges against Mr. Severe. Magistrate Reese advised that he would come to Mr. Williams' store, which he owned and operated in Grafton. At the store, Magistrate Reese explained to Mr. Williams and his wife the possible consequences of the second offense DUI charge. Magistrate Reese also suggested actions Mr. Severe could take to facilitate obtaining his license back from the West Virginia Department of Motor Vehicles including attending DUI school and securing an ignition interlock system. The conversation proceeded to a discussion about a closed glass factory in Grafton where Magistrate Reese's grandparents had worked. In appreciation for his assistance, Mr. Williams and his wife gave Magistrate Reese several pieces of china and an ashtray.[2] However, the gifts were not given in consideration of Magistrate Reese reducing the charges against Mr. Severe.

Thereafter, Mr. Severe and his girlfriend, Cathy Gallagher, visited Magistrate Reese at his office. They understood Magistrate Reese to say that if Mr. Severe attended DUI schooling and obtained an ignition interlock system from the Department of Motor Vehicles, Reese would see to it that the second offense DUI charge was reduced to a first offense DUI charge.

The day before the scheduled hearing in Mr. Severe's case, Ms. Gallagher contacted Magistrate Reese to inquire as to how things looked for Mr. Severe. Magistrate Reese advised that things did not look hopeful and that Mr. Severe was probably facing six months in jail and a minimum of a one thousand dollar ($1000) fine. Ms. Gallagher then spoke with Howard Ferris, Mr. Severe's attorney, and told him that Magistrate Reese was not going to reduce the charge to first offense DUI.

Apparently, Mr. Ferris had contacted Mr. Severe by letter on several occasions and requested that he visit his office. Mr. Severe had consistently replied that he thought the DUI charge would be reduced, and therefore, he did not need to come to Mr. Ferris' office. After his conversation with Ms. Gallagher, Mr. Ferris contacted John Bord, assistant prosecuting attorney for Taylor County, and inquired as to whether there was a plea agreement. Mr. Bord stated that no plea agreement was available for Mr. Severe.

At some point, Magistrate Reese contacted Lieutenant Robert Dougherty, the arresting police officer, about whether he had any objection to the charges against Mr. Severe being reduced to first offense DUI.[3] Lieutenant Dougherty indicated that he had no objection. However, later, when Mr. Bord asked if there was a deal, Lieutenant Dougherty replied that no deal had been agreed

---

2. It was stipulated by the parties before the Judicial Hearing Board that the total estimated value of the china and ashtray was $27.00.

3. Magistrate Reese testified before the Board that his conversation with Lieutenant Dougherty was a routine inquiry for scheduling purposes. He stated that it was not uncommon as he liked to know what was going on with the case and how much docket time to schedule.

Lieutenant Dougherty testified that Magistrate Reese initiated the conversation and wanted to know what he could do for Mr. Severe to try to keep him from losing his job, possibly reducing the charge to a first offense with a stiffer penalty other than just twenty-four hours in jail.

upon between him, the magistrate, and the defendant.[4]

Subsequently, Mr. Severe obtained new counsel. After an affidavit was filed claiming that Magistrate Reese was prejudiced and should not hear the case, Magistrate Reese recused himself.

On June 24, 1996, a complaint was filed with the Judicial Investigation Commission against Magistrate Reese alleging violations of the Code of Judicial Conduct. As set forth in the complaint, Magistrate Reese was charged with violating Canon 1 of the Code, concerning a judge's duty to uphold the integrity and independence of the judiciary; Canon 2A and 2B regarding avoidance of impropriety and the appearance of impropriety; Canon 3A, 3B(2) and 3B(7) involving performing the duties of a judicial officer impartially and diligently and prohibiting ex parte communications.

The Board conducted an evidentiary hearing on September 5, 1996. It concluded that Magistrate Reese violated Canon 2A, 2B and Canon 3B(7). As previously indicated, the Board recommends that Magistrate Reese be admonished.

## II

■ Pursuant to Rule 4.5 of the Rules of Judicial Disciplinary procedure: "In order to recommend the imposition of discipline on any judge, the allegations of the formal charges must be proved by clear and convincing evidence." *See also* syl. pt. 1, *In the Matter of Hey,* 192 W.Va. 221, 452 S.E.2d 24 (1994); syl. pt. 2, *In the Matter of Browning,* 192 W.Va. 231, 452 S.E.2d 34 (1994). However, in syllabus point 1 of *West Virginia Judicial Inquiry Commission v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980), we ex-

plained that: "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." *See also* syllabus, *In the Matter of Verbage,* 200 W.Va. 504, 490 S.E.2d 323 (1997); syllabus, *In the Matter of Browning,* 197 W.Va. 75, 475 S.E.2d 75 (1996).

■ We have held that: "The purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *In the Matter of Gorby,* 176 W.Va. 16, 339 S.E.2d 702 (1985). *See also* syl. pt. 3, *In the Matter of Rice,* 200 W. Va. 401, 489 S.E.2d 783(1997); syl. pt. 1, *In the Matter of Phalen,* 197 W.Va. 235, 475 S.E.2d 327 (1996). Similarly, Canon 2A demands that judicial officers "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."[5] The Commentary to the Canons of Judicial Conduct is instructive on the intent of the drafters. Under Canon 2A, the Commentary advises that "[t]he test for the appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibility with integrity, impartiality, and competence is impaired." We have recognized that to uphold the standards of judicial conduct:

'[A] judge whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system as an independent, impartial source of reasoned actions and decisions. Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench.'

Canon 2B, in its entirety, provides:
  A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.

---

4. Lieutenant Dougherty testified that he told Mr. Bord that he had some discussion about a deal with Magistrate Reese, but there was never a guarantee that a deal was made.

5. Canon 2A, in its entirety, provides: "A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

*In the Matter of Gorby,* 176 W.Va. 11, 14, 339 S.E.2d 697, 700 (1985), *modified on other grounds,* 176 W.Va. 16, 339 S.E.2d 702 (1985), *citing Matter of Bennett,* 403 Mich. 178, 199, 267 N.W.2d 914, 922 (1978).

Magistrate Reese contends that the meeting with his cousin, Mr. Williams, at his store, was not a violation of Canon 2A and 2B. Magistrate Reese further asserts that even if there was an appearance of impropriety from this meeting, then the appearance was purged by his frank disclosure with all parties prior to his recusal from the case. We disagree with Magistrate Reese's characterization of his actions.

Magistrate Reese admits that he met with family members and Mr. Severe on more than one occasion. Although he denies representing to Mr. Severe that he would reduce the charge, he does admit that he discussed the administrative aspects of the case related to the Department of Motor Vehicles. We agree with the Judicial Hearing Board that by making efforts to assist Mr. Severe, Magistrate Reese appeared to allow family relationships to interfere with the conduct of his office and created the implication that he had struck a deal with Mr. Williams and Mr. Severe in an effort to reduce the charge to first offense DUI. Moreover, Magistrate Reese did not avoid the appearance of impropriety when he accepted the gifts of china and an ashtray from Mr. Williams, even if he believed the items were given as a gift from a family member.

Under Canon 3B(7), a judicial officer is prohibited from engaging in ex parte communications or communications outside the presence of the parties in a pending proceeding.[6] With respect to ex parte communications, the Commentary explains that: "The prescriptions against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the pro-

ceeding, except to the limited extent permitted."

In *In the Matter of Eplin,* 187 W.Va. 131, 416 S.E.2d 248 (1992), we found an ethical violation where a magistrate intervening on behalf of a defendant attempted to persuade the arresting officer to reduce the charges. Magistrate Eplin also convinced an assistant prosecutor to agree to a plea agreement by falsely stating that the prosecutor had agreed to the deal previously. *Id.* at 133, 416 S.E.2d at 250. The efforts of Magistrate Eplin were an attempt to curry favor with a state senator who had solicited the magistrate's help on behalf of his employee, the defendant. *Id.*

Although the actions of Magistrate Reese are not as egregious as those in Magistrate Eplin's case, he, nonetheless, sought out Lieutenant Dougherty and in some manner discussed reducing the charges.[7] Furthermore, he communicated with Mr. Severe and family members about the case on at least three occasions. Neither the prosecuting attorney, nor Mr. Severe's attorney were present during any of the communications. While Magistrate Reese contends that these conversations were just informational in nature, we agree with the Board that Magistrate Reese engaged in prohibited ex parte communications.

Accordingly, upon all of the above, we agree with the recommendation of the Board and we find that Magistrate Reese should be admonished.

Admonishment.

---

**6.** Canon 3B(7) provides, in part:

A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider

other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding[.]

**7.** *See* notes 3 and 4, *supra.*