452 S.E.2d 34

**In the Matter of June G. BROWNING, Magistrate, Mingo County.**

**No. 21863.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1994.

Decided Nov. 18, 1994.

Charles R. Garten, Charleston, for Judicial Disciplinary Counsel.

James M. Cagle, Charleston, for Magistrate June G. Browning.

CLECKLEY, Justice:

This judicial disciplinary proceeding was initiated against Magistrate June G. Brown-

ing of Mingo County by the Judicial Hearing Board (Hearing Board) after the Judicial Investigation Commission (Commission) filed a complaint against her. In its complaint, the Commission charged Magistrate Browning with violating Canon 3 of the Judicial Code of Ethics and Canon 1, Canon 2A, and Canon 3A, B(1), (2), (3), (4), and C(1) of the Code of Judicial Conduct.[1] The Commission set forth the grounds for the violations in five separate paragraphs in its complaint. These paragraphs alleged Magistrate Browning: (1) "failed to be patient and courteous to law enforcement officials appearing" before her; (2) was rude to a group of jurors on July 14, 1992; (3) refused to accept a complaint made by an environmental inspector for the West Virginia Department of Natural Resources or to issue him a summons during the fall of 1992; (4) refused to cooperate with the Chief Magistrate of Mingo County, Delores D. Sidebottom–Shemelya, in changing Magistrate Browning's scheduled time off from work; and (5) failed to issue a protective order in a domestic violence case on March 10, 1993, when the victim appeared in the Mingo County Magistrate Court.

The Hearing Board held a hearing on March 10 and 11, 1994, with regard to these allegations. On May 11, 1994, the Hearing Board filed with this Court its "RECOMMENDED FINDINGS OF FACT[,] CONCLUSIONS OF LAW[,] AND PROPOSED DISPOSITION" where it recommends we dismiss paragraphs one, two, and three of the complaint. However, the Hearing Board also recommends that we find Magistrate Browning violated the Code of Judicial Conduct by the allegations made in paragraph four, failing to cooperate with scheduling, and in paragraph five, failing to issue the domestic violence protective order. Al-

though the Hearing Board recommends no punishment be imposed for the scheduling difficulties, it suggests we publicly reprimand Magistrate Browning and order her to pay a $500 fine for not issuing the protective order.

■ As is our traditional practice in cases in which we are asked to discipline judicial officers, we independently review the record to determine if the findings of fact and recommendations of the Hearing Board are appropriate. As we stated in Syllabus Point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980):

"The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings."

*See also In the Matter of Hey*, 188 W.Va. 545, 425 S.E.2d 221 (1992); *In the Matter of Crislip*, 182 W.Va. 637, 391 S.E.2d 84 (1990). In *Dostert*, we discussed in detail our underlying reasons for conducting a de novo review, and concluded that it was this Court's constitutional duty under Section 8 of Article VIII of the West Virginia Constitution[2] to make a completely independent evaluation of the record.

■ In Syllabus Point 4 of *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983), we said the burden of proof to be applied in judicial disciplinary proceedings is:

"Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'"[3]

*See also In the Matter of Hey, supra; In the Matter of Codispoti*, 186 W.Va. 710, 414

---

1. The Code of Judicial Ethics was superseded by the Code of Judicial Conduct which was adopted on October 21, 1992, and became effective on January 1, 1993.

2. The relevant parts of Section 8 of Article VIII provide:

"[T]he supreme court of appeals is authorized to censure or temporarily suspend any justice, judge or magistrate having the judicial power of the State. . . .

"No justice, judge or magistrate shall be censured, temporarily suspended or retired un-

der the provisions of this section unless he shall have been afforded the right to have a hearing before the supreme court of appeals[.]"

3. The West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters was superseded by the West Virginia Rules of Judicial Disciplinary Procedure. The most recent applicable amendment to Rule III(C)(2) of the Rules of Judicial Disciplinary Procedure became effective on January 1, 1993, and is identical to Rule

S.E.2d 628 (1992). Therefore, it is this Court's responsibility to review the record in this case de novo and determine if there is clear and convincing evidence to prove the allegations in the complaint.[4]

## I.

### COURTESY TO LAW ENFORCEMENT OFFICIALS

The Hearing Board notes that the Commission itself withdrew paragraph one of the complaint which alleged Magistrate Browning was not "patient and courteous to law enforcement officials[.]" Consequently, this allegation was not developed before the Hearing Board. After reviewing the record, we find little evidence in the record that substantiates the claim. Therefore, we agree with the Hearing Board that paragraph one of the complaint filed by the Commission should be dismissed.

## II.

### COURTESY TO JURORS

With regard to paragraph two, we find that there was conflicting evidence as to whether Magistrate Browning was rude to a group of jurors who, as the result of some form of misunderstanding, arrived early on July 14, 1992, for jury duty. Some of the jurors who testified before the Hearing Board claimed that Magistrate Browning was disrespectful and treated them inappropriately. On the other hand, two other jurors said that she acted appropriately, one of which recalled Magistrate Browning apologizing to the group for the misunderstanding. Although it is the obligation of magistrates to be respectful to jurors,[5] we do not find clear and convincing evidence that Magistrate Browning was rude to these jurors. We, therefore, agree with the Hearing Board and dismiss paragraph two.

## III.

### ISSUING THE SUMMONS

Paragraph three of the complaint alleges Magistrate Browning refused to handle a case brought by an environmental inspector. The inspector went to the Mingo County

---

III(C)(2) in the preceding version. Rule III(C)(2) provides, in part:

> "Except where otherwise provided for by these rules, the provisions of the West Virginia Rules of Civil Procedure and the rules of evidence used in civil cases in West Virginia shall govern proceedings before the Board, but the allegations of the complaint must be proved by clear and convincing evidence."

Effective July 1, 1994, the rules again were revised and reformatted. The relevant portion is contained now in Rule 4.5.

4. We realize, however, that the Hearing Board is in a better position to resolve the factual disputes of a particular case. The members of the Hearing Board hear the testimony of the witnesses firsthand and are much closer to the pulse of the hearing to resolve such issues as credibility and conflict of facts. Substantial consideration, therefore, should be given to the findings of fact of the Hearing Board. This consideration does not mean that this Court is foreclosed from making an independent assessment of the record, but it does mean that absent a showing of some mistake or arbitrary assessment, findings of fact are to be given substantial weight. In this context, we place the burden on the party challenging the Hearing Board's findings of fact to demonstrate that the findings are not supported by evidence in the record. To ignore the Hearing Board's findings would render its important adjudicatory role a useless gesture, deprive the parties of peer review, and deprive this Court of, the most important benefit, the Hearing Board members' collective and evaluative judgment. To be specific, in no case will this Court act as a rubber stamp. Although the Hearing Board's findings of fact are given respectful consideration, they are not binding on this Court.

5. Canon 3 of the Judicial Code of Ethics was in effect during the time Magistrate Browning allegedly treated the jurors inappropriately. The most relevant section of this Canon provides:

> *A Judge Should Perform the Duties*
> *of His Office Impartially*
> *and Diligently*
>
> "The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
> "A. Adjudicative Responsibilities.
>
>    \*    \*    \*    \*    \*    \*
>
> "(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control."

A similar version now exists in Canon 3A and B(4) of the Code of Judicial Conduct.

Magistrate Court to obtain a summons against a company that was building a bridge across a stream in Mingo County. The inspector completed a criminal complaint in which he claimed that materials from the site were released into the water and may have resulted in a fish kill downstream. Magistrate Browning disclosed to the inspector that she fought for the construction of the bridge as it provided her with her only means of access to her house during periods of high water. Magistrate Browning told the inspector that she could not handle the complaint due to prejudice and, therefore, he should see another magistrate.

■ In her brief, Magistrate Browning argues that by refusing to handle the case she was complying with her duty under Canon 3 of the Judicial Code of Ethics. Specifically, Canon 3C(1)(a) states:

> "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> "(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"[6]

We recently held in Syllabus Point 3 of *State ex rel. Brown v. Dietrick*, 191 W.Va. 169, 444 S.E.2d 47 (1994):

> "'[W]here a challenge to a judge's impartiality is made for substantial reasons which indicate that the circumstances offer a possible temptation to the average man as a judge not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself.' Syllabus Point 14, in part, *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976)."

We explained in *Brown* that this syllabus point is analogous to "[t]he general standard

under Canon 3C(1) to determine whether a judge should be disqualified because the judge's impartiality might reasonably be questioned[.]" 191 W.Va. at 174, 444 S.E.2d at 52.

On the other hand, the Commission argues that Magistrate Browning was obligated to handle the complaint under Rule 4 of the Rules of Criminal Procedure for the Magistrate Courts. In relevant part, Rule 4(a) states that a warrant or summons "shall be issued" upon a showing of probable cause in a complaint or affidavit.[7] The Commission cites our prior cases of *In re Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984), and *In re Markle*, 174 W.Va. 550, 328 S.E.2d 157 (1984), to support its position that Magistrate Browning was obligated to handle the complaint. In Syllabus Point 4 of *In re Markle*, we said: "'The deliberate failure to follow mandatory criminal procedures constitutes a violation of the Judicial Code of Ethics.' Syllabus Point 2, *In Re K. Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984)." *See also In the Matter of Monroe*, 174 W.Va. 401, 327 S.E.2d 163 (1985). However, unlike the case at bar, we find that in none of the above cited cases did the magistrates make an initial finding that they were disqualified. Instead, the allegations against the magistrates were that, once they were involved in the cases, they did not follow the proper procedure or they otherwise abused their positions.

■ In the present case, Magistrate Browning explained that her impartiality could reasonably be questioned because she was familiar with the construction of the bridge and she derived a direct benefit from it being built. Magistrate Browning argues that if she would not have disqualified herself, her bias would give rise to the exact opposite complaint as we now have before

---

6. In the Code of Judicial Conduct, a similar provision is found in Canon 3E(1)(a).

7. Rule 4(a) provides:
   "(a) *Issuance.* If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall be issued to any officer authorized by law

to arrest persons charged with offenses against the state. The magistrate may restrict the execution of the warrant to times during which a magistrate is available to conduct the initial appearance. Within the discretion of the magistrate a summons instead of a warrant may be issued. More than one warrant or summons may be issued on the same complaint. If a defendant fails to appear in response to the summons, a warrant shall be issued."

us.[8] We agree and conclude that, except in very limited circumstances,[9] it is improper for a magistrate to act in a case in which the magistrate cannot remain neutral and detached. Therefore, Syllabus Point 2 of *In re Pauley, supra,* quoted in Syllabus Point 4 of *In re Markle, supra,* is limited to situations in which a magistrate is not otherwise disqualified. We hold that it is not a violation of the Judicial Code of Ethics or the Code of Judicial Conduct to fail to follow mandatory criminal procedure if a magistrate is disqualified from hearing the matter. Hence, we do not find that Magistrate Browning violated any Canons by failing to issue the summons, and we find she acted properly by referring the inspector to another magistrate. Again, we agree with the Hearing Board and dismiss paragraph three of the complaint.

## IV.

### COOPERATION WITH SCHEDULING

The fourth paragraph of the Commission's complaint states that Magistrate Browning failed to follow and cooperate in changing the magistrate court's schedule. In her brief, Magistrate Browning seems to concede that there were problems with scheduling. However, Magistrate Browning argues that these problems should be resolved by the affected parties and should not be decided by this Court. We decline to take these problems so lightly.

After reviewing the record, we agree with the Hearing Board that Magistrate Browning failed to cooperate with scheduling. The record in this case reveals that Magistrate Browning took numerous days off from work.[10] In addition, there was at least one occasion, on March 4, 1993, when Chief Magistrate Sidebottom–Shemelya, who was responsible for setting the schedule, and Magistrate Browning had a substantial disagreement with regard to taking the day off from work. In this instance, the circuit judge for Mingo County, the Honorable Elliott E. Maynard, interceded and resolved the conflict. Ultimately, Magistrate Browning worked that day.

Under Canon 3A of the Code of Judicial Conduct, "[t]he judicial duties of a judge take precedence over all the judge's other activities." More specifically, Canon 3C(1) provides, in part, that a judge "should cooperate with other judges and court officials in the administration of court business." In *In the Matter of Harshbarger,* 173 W.Va. 206, 314 S.E.2d 79 (1984), we publicly censured a magistrate for leaving his post prior to the end of his scheduled shift of night court. Likewise, in *In the Matter of Osburn,* 173 W.Va. 381, 315 S.E.2d 640 (1984), we reprimanded a magistrate who was on duty but remained at his house when a prisoner was brought to his office for arraignment. In both of these cases, we found the magistrates violated Canon 3 of the Judicial Code of Ethics.[11] Although we do not find that the scheduling situation in the present case is as serious as the problems that occurred in *Harshbarger* and *Osburn,* we conclude that Magistrate Browning violated Canon 3A and

---

8. *See In the Matter of Eplin,* 187 W.Va. 131, 416 S.E.2d 248 (1992) (where, in part, the magistrate was suspended when he did not disqualify himself and gave special treatment to criminal defendant).

9. We recognize that a magistrate, who would otherwise be disqualified, may handle a case if the rule of necessity applies. In Syllabus Points 7 and 8 of *Brown, supra,* we explained:

    "7. The rule of necessity is an exception to the disqualification of a judge. It allows a judge who is otherwise disqualified to handle the case to preside if there is no provision that allows another judge to hear the matter.
    "8. The rule of necessity is an exception to the general rule precluding a disqualified judge from hearing a matter. Therefore, it is strictly construed and applied only when there is no other person having jurisdiction to handle the matter that can be brought in to hear it." In these situations, Syllabus Point 4 of *In re Markle, supra,* would apply. However, we do not find the rule of necessity applicable in the present case. Although the investigator complained because it was inconvenient for him to see another magistrate, his circumstances did not rise to the level that would invoke the rule of necessity. In fact, a summons subsequently was issued by another magistrate.

10. We note that a few of these days appear to be for legitimate medical reasons.

11. The cited section of Canon 3 of the Judicial Code of Ethics in these cases virtually is identical to Canon 3A of the Code of Judicial Conduct.

3C(1) by failing to cooperate. Therefore, we agree with the Hearing Board and find that Magistrate Browning violated paragraph four of the complaint.

We recognize that Magistrate Browning and Chief Magistrate Sidebottom–Shemelya do not have a good working relationship which is the basis of some of the underlying conflict between the two. However, we do not excuse Magistrate Browning's lack of cooperation with Chief Magistrate Sidebottom–Shemelya in resolving scheduling matters. It is essential that the public have access to the magistrate court system, and this goal cannot be accomplished if the magistrates cannot agree on a work schedule.

## V.

### ISSUING THE PROTECTIVE ORDER

Paragraph five contains the most serious allegation in the complaint. On March 10, 1993, Samantha M.[12] went to the Mingo County Magistrate Court seeking a protective order against her husband claiming that he beat her the previous night. She arrived at the magistrate court sometime between 8:30 and 9:30 a.m. Those who saw her that morning, including Magistrate Browning, said that Samantha M.'s face was badly beaten.

Magistrate Browning was scheduled to do intake on that day, and Chief Magistrate Sidebottom–Shemelya was conducting a hearing. Magistrate Browning stated that she told Samantha M. to go to the Chief Magistrate's office to see if they could help her because there were other people in need of assistance who arrived before her, one of which was a woman who also needed a domestic violence protective order. Magistrate Browning said that her secretary was not at work that day, and she knew it would be a while before she could get to Samantha M.

Magistrate Browning claimed she closed her office door and stopped seeing the public around 11:30 or 11:45 that morning because she was not feeling well. She said that she looked for Samantha M. but did not see her.

Therefore, it appears that she assumed Samantha M. was being served by Chief Magistrate Sidebottom–Shemelya's assistant. Magistrate Browning said she stayed in her office until about 1:00 p.m. typing and answering the phone.

Contrary to Magistrate Browning's testimony, Samantha M. said that she waited to see Magistrate Browning; however, when it was her turn, Magistrate Browning told her that she would not see her because she did not feel well. Another woman, who was with Samantha M., testified that Magistrate Browning told them that Samantha M. should either file a petition with another magistrate or come back tomorrow. Magistrate Browning never gave Samantha M. the opportunity to complete a domestic violence petition.

Chief Magistrate Sidebottom–Shemelya testified that the lobby was full of people when she came out of the courtroom at approximately 12:20 p.m. She noticed that Samantha M.'s face was beaten and cut, so she took her into her office and issued her a domestic violence protective order over her lunch hour. In the meantime, she sent someone to Magistrate Browning's office to ask her if she could assist another man who was upset over the wait. Chief Magistrate Sidebottom–Shemelya stated that at first the person she sent returned and reported that Magistrate Browning was not seeing anyone else because she did not feel well, but, after a second request, Magistrate Browning agreed to see the man. Magistrate Browning admits to assisting this man before she left for the day.

After reviewing the record, we find that Magistrate Browning violated Canon 1 and Canon 2A of the Code of Judicial Conduct by failing to issue the protective order to Samantha M. Canon 1 provides, in part, that "[a]n independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those

---

12. As is our practice in cases which involve sensitive facts, we do not use last names to avoid stigmatizing the parties. *See, e.g., State v. George W.H.*, 190 W.Va. 558, 439 S.E.2d 423 (1993); *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

standards so that the integrity and independence of the judiciary will be preserved." To further this objective, Canon 2A states, in part, that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." We find that there is clear and convincing evidence that Magistrate Browning told Samantha M. that she would not assist her, then returned to her office to do paperwork, and, later, agreed to assist another man. Therefore, we find she violated these sections. Samantha M. was badly beaten and was in desperate need of a protective order. Samantha M. testified that she believed her husband was going to kill her and she "jumped from a second story bedroom window to get away from him[.]" To refuse to assist Samantha M. was in total disregard and a dereliction of Magistrate Browning's duty to uphold the public's confidence and the integrity of the judiciary.

■ Domestic violence cases are among those that our courts must give priority status.[13] In W.Va.Code, 48–2A–1, et seq., the West Virginia Legislature took steps to ensure that these cases are handled both effectively and efficiently by law enforcement agencies and the judicial system. Specifically, W.Va.Code, 48–2A–1(b)(2) (1992), provides that among the purposes of this article is "[t]o create a speedy remedy to discourage violence against family members with whom the abuser has continuing contact[.]" Under the article, any individual may file a petition for a protective order, and relief shall not be denied if the individual presents sufficient facts. W.Va.Code, 48–2A–4(a) (1992).[14]

The magistrate court system is a critical link in the process of filing petitions and issuing protective orders in domestic violence cases. Frequently, a magistrate may be an abuse victim's first contact with the judicial system.[15] In fact, under W.Va.Code, 48–2A–4(e)(1) (1992), magistrates are obligated to provide assistance to those individuals who desire to file petitions. W.Va.Code, 48–2A–4(e)(1), states, in part:

"... such person may obtain assistance in filing such a petition at a magistrate court within the county of such place of temporary or permanent residence. In such event, a magistrate or the clerk of such magistrate court *shall*:

"(1) Provide to such person such forms and such assistance as may be necessary for the filing of a petition described in subsection (a) of this section[.]" (Emphasis added).

See *Harman v. Frye*, 188 W.Va. 611, 620, 425 S.E.2d 566, 575 (1992) ("[t]he legislature has clearly stated its intent to allow abused parties to present complaints to the magistrate, and a party who has suffered abuse has a statutory right to file a petition under *W.Va. Code*, 48–2A–4(a)"). Moreover, once a petition is filed, it "shall be given priority over any other civil action before the court except actions in which trial is in progress and shall be docketed immediately upon filing." W.Va. Code, 48–2A–3(d) (1994), in part.[16]

■ Therefore, we conclude that magistrates are statutorily required to provide an individual with any assistance necessary to complete a petition for a protective order. Once the petition is completed, the magistrate must file the petition and, upon a show-

13. The strong language contained in W.Va.Code, 48–2A–1, et seq., leads us to conclude, as we did in child abuse and neglect cases, that domestic violence cases must be recognized "as *being among* the *highest* priority for the courts' attention." Syllabus Point 1, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). (Emphasis added).

14. W.Va.Code, 48–2A–4(a), states "[n]o person shall be refused the right to file a petition under the provisions of this article. No person shall be denied relief under the provisions of this article if she or he presents facts sufficient under the provisions of this article for the relief sought."

15. We recognize that circuit courts are given concurrent jurisdiction under this article in W.Va.Code, 48–2A–3(a) (1994).

16. The entire text of W.Va.Code, 48–2A–3(d), states:

"(d) *Priority of petitions.*—Any petition filed under the provisions of this article shall be given priority over any other civil action before the court except actions in which trial is in progress and shall be docketed immediately upon filing. Any appeal to the circuit court of a magistrate's judgment on a petition for the relief under this article shall be heard within ten working days of the filing of the appeal."

ing of sufficient facts, issue a protective order. If a magistrate believes that she or he is disqualified from handling the matter, the magistrate must examine carefully whether the rule of necessity applies.[17] Under no circumstances should a victim of abuse be turned away from a magistrate or a circuit judge without ensuring the victim will receive prompt attention by another magistrate or judge. We agree with the Hearing Board and find that Magistrate Browning violated the Judicial Code of Conduct by the actions stated in paragraph five of the complaint.

## VI.

### CONCLUSION

For the foregoing reasons, we dismiss paragraphs one, two, and three of the complaint. However, we find Magistrate Browning violated Canons 3A and 3C(1) of the Code of Judicial Conduct by failing to cooperate with scheduling as alleged in paragraph four. Additionally, we find that Magistrate Browning did not follow the mandates under W.Va. Code, 48–2A–1 *et seq.*, and conclude she violated Canons 1 and 2A of the Code of Judicial Conduct by failing to assist Samantha M. in obtaining a protective order as alleged in paragraph five. We decline to punish Magistrate Browning with respect to the scheduling problems, but we issue a public reprimand against her and order her to pay a $500 fine for failing to issue the protective order.

Public reprimand and fine.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.