457 S.E.2d 147

**In the Matter of Honorable Larry STARCHER, Judge, Circuit Court of Monongalia County.**

**No. 22248.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1995.

Decided March 30, 1995.

Charles R. Garten, Charleston, Judicial Disciplinary Counsel.

Larry V. Starcher, Morgantown, pro se.

PER CURIAM:

This case is before this Court upon the recommendation of the West Virginia Judicial Hearing Board that Judge Larry Starcher of the Circuit Court of Monongalia County be admonished for a violation of the *West Virginia Code of Judicial Conduct.* The violation concerns an *ex parte* communication initiated by Judge Starcher with an assistant prosecuting attorney concerning an ongoing criminal trial in Monongalia County. Judge Starcher, pursuant to Rule 4.9 of the *West Virginia Rules of Judicial Disciplinary Procedure,* filed a consent to the recommendation. However, for the reasons expressed below, this Court concludes that a reprimand, rather than the lesser sanction of admonishment, is warranted.

I

The facts are not substantially in dispute. On December 16, 1993, Ms. Linda Gutsell, an associate of the law firm Spilman, Thomas & Battle, was sitting in a room adjoining Judge Starcher's chambers when she became aware of a telephone conversation taking place between Judge Starcher, who had initiated the call, and an assistant prosecuting attorney of Monongalia County. The telephone conversation concerned the on-going criminal trial of *State v. Hawkins,* in which the defendant was accused of sexually assaulting several West Virginia University co-eds.

Judge Starcher admitted that the conversation occurred and that it related to the State's upcoming closing argument in the *Hawkins* trial. Specifically, Judge Starcher stated that during the conversation he advised the assistant prosecuting attorney that: (1) the State should have some supporters present in the courtroom during closing argument, e.g., the victims, a police officer and some female attorneys, (2) the term "serial

rapist" might be used frequently, and (3) the assistant prosecuting attorney should be more emotional before the jury.

By way of explanation, Judge Starcher described the *Hawkins* trial as long and difficult and a trial during which he became concerned that the defense was "taking over" the courtroom. Moreover, during his testimony before the Judicial Hearing Board, Judge Starcher indicated that his sympathy for the victims "no doubt allowed [his] personal feelings to become injected into the trial."

Ms. Gutsell reported the conversation to her law firm, and the following day, December 17, 1993, Linda Gutsell and Paul Edward Parker, III, of Spilman, Thomas & Battle, went to Judge Starcher's chambers and informed him that the conversation with the assistant prosecuting attorney had been overheard. The complaint of the Judicial Investigation Commission suggests that Judge Starcher expressed displeasure toward Ms. Gutsell, Mr. Parker and the law firm concerning the pursuit of the matter. Judge Starcher, however, denied that he threatened Ms. Gutsell, Mr. Parker, or the law firm in any way.

In May, 1994, a complaint was filed against Judge Starcher by the Judicial Investigation Commission with regard to the telephone conversation between Judge Starcher and the assistant prosecuting attorney. Although several Canons of the *Code of Judicial Conduct* are cited, the gravamen of the complaint, as well as the provision relied upon by the Judicial Hearing Board for its recommendation, is Canon 3B(7), which provides, in part:

> A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. *A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:*
>
> (a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or

issues on the merits are authorized; provided:

> (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
>
> (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(emphasis added).

The complaint further suggests that Judge Starcher violated the *Code of Judicial Conduct* by allegedly threatening to take retaliatory action against Ms. Gutsell, Mr. Parker and their law firm for pursuing the matter concerning the overheard conversation.

The Judicial Hearing Board conducted an evidentiary hearing and, on September 20, 1994, filed its Findings of Fact, Conclusions of Law and Proposed Disposition. Citing Canon 3B(7), the Board concluded that Judge Starcher violated the *Code of Judicial Conduct* by initiating an *ex parte* communication with the assistant prosecuting attorney and advising the assistant prosecuting attorney concerning the State's closing argument in the *Hawkins* trial.

The Judicial Hearing Board recommends that Judge Starcher be admonished with regard to the *ex parte* communication. Furthermore, the Board recommends that the complaint be dismissed with regard to Judge Starcher's alleged conduct toward Ms. Gutsell, Mr. Parker and their law firm. Judge Starcher, pursuant to Rule 4.9 of the *West Virginia Rules of Judicial Disciplinary Procedure*, filed a consent to the Board's recommendations. The Judicial Investigation Commission, however, filed a general objection to the recommendations.

## II

■ As indicated in the brief of the Judicial Investigation Commission, this case was conducted under the *West Virginia Rules of Judicial Disciplinary Procedure*, which became effective on July 1, 1994. Unchanged, however, is the standard of proof that allega-

tions of a complaint in a judicial disciplinary proceeding "must be proved by clear and convincing evidence." Syl. pt. 1, *In the Matter of: John Hey, Judge,* 192 W.Va. 221, 452 S.E.2d 24 (1994); syl. pt. 4, *In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391 (1983). Rule 4.5 of the current *Rules* states that "[i]n order to recommend the imposition of discipline on any judge, the allegations of the formal charge must be proved by clear and convincing evidence."

▇▇▇ Moreover, we recognized recently in *In the Matter of: June Browning, Magistrate,* 192 W.Va. 231, 452 S.E.2d 34 (1994), that "it is this Court's responsibility to review the record in [such cases] de novo and determine if there is clear and convincing evidence to prove the allegations in the complaint." As this Court held in syllabus point 1 of *West Virginia Judicial Inquiry Commission v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980): "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." *See also* syl. pt. 1, *In re Pauley, supra.* The findings of the Judicial Hearing Board are "not binding on this Court." *In the Matter of: June Browning, Magistrate, supra* n. 4.

The circumstances before this Court are somewhat similar to those in *In the Matter of: Kaufman,* 187 W.Va. 166, 416 S.E.2d 480 (1992). In *Kaufman,* a circuit judge initiated a telephone conversation with the president of Charleston Area Medical Center, Inc., which corporation was a party to a civil action pending before the judge. The circuit judge, in *Kaufman,* stated that he placed the call in order to ensure that CAMC's president would appear at the next scheduled court hearing. In addition, CAMC indicated that the judge left the impression, through the telephone conversation, that he was "unhappy" with CAMC's course of action in the litigation.

▇▇ In the *Kaufman* case, this Court adopted the recommendation of the Judicial Hearing Board that the circuit judge should be admonished. Specifically, this Court concluded that the initiation of the telephone conversation by the judge constituted an im-

proper *ex parte* communication. Syllabus point 2 of *Kaufman* states: "The initiation of *ex parte* communications by a judge is strictly prohibited by Canon 3A(4) of the Judicial Code of Ethics, 'except as authorized by law.'" It was recognized in *Kaufman* that "[i]n order to promote public confidence in the judiciary, courts have imposed sanctions varying from reprimand to removal, against judges held to have engaged in *ex parte* communications." 187 W.Va. at 169–70, 416 S.E.2d at 483–84. It should be noted, however, that, under the circumstances in *Kaufman,* two justices dissented, indicating that no sanction against the circuit judge should be imposed.

▇▇ In the case before us, we recognize, as in *Kaufman,* that a distinction exists between the fact that an *ex parte* communication occurred, and the content of that communication. As *Kaufman* states: "The very act of talking to one party without the presence of the other creates an *ex parte* situation." 187 W.Va. at 171, 416 S.E.2d at 485. Nevertheless, this Court would be remiss in not considering the content of the communication between Judge Starcher and the assistant prosecuting attorney. The communication herein was more egregious than in *Kaufman.* It was less ambiguous than the conversation between Judge Kaufman and the president of CAMC. Here, Judge Starcher admittedly initiated the telephone conversation in order to advise the State upon the manner in which its closing argument should be conducted in the *Hawkins* trial.

The Court of Criminal Appeals of Oklahoma, in *Jones v. State,* 668 P.2d 1170 (Okla. 1983), awarded post-conviction relief to a defendant in a felony case, where the trial judge had actively attempted to help the district attorney develop trial strategy. Citing a similar provision to our Canon 3B(7), the Court, in *Jones,* stated: "When a trial judge initiates ex parte communication suggesting various procedures to the prosecution, ... the accused's right to a hearing before an impartial judge is nullified. A trial judge should never involve his personal views in the hearing of a matter[.]" 668 P.2d at 1171–72. *See also State v. Finley,* 704

S.W.2d 681, 684 (Mo.App.1986) ("It was improper for the trial judge to assume the prosecutor's role as an advocate for the state[.]"); Justice Bernard Botein, *Trial Judge* p. 97 (Da Capo Press 1974) ("Problems arise when the judge ventures across the line marking the traditional division of labor between lawyer and judge."); Phoebe Carter, Annotation, *Disciplinary Action Against Judge for Engaging in Ex Parte Communication With Attorney, Party or Witness,* 82 A.L.R.4th 567 (1990).

■ As indicated above, Judge Starcher initiated an *ex parte* communication in order to advise the State upon the manner in which its closing argument should be conducted. The occurrence of the *ex parte* communication and its content have not been disputed. The provisions of Canon 3B(7) prohibiting such communication are also undisputed. As we held in syllabus point 1 of *In the Matter of: Karr,* 182 W.Va. 221, 387 S.E.2d 126 (1989): "When the language of a canon under the Judicial Code of Ethics is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction."

This Court is aware that the *Hawkins* trial was, in fact, long and difficult and that the ordeal of the victims had an impact upon Judge Starcher. In the course of a criminal trial, "evidence as to a defendant's activities may incite natural disgust, but it could hardly be thought that a judge would be disqualified because he reacted as would anyone else." 46 Am.Jur.2d *Judges* 170 (1969). "We could not, if we would, get rid of emotions in the administration of justice. The best we can hope for is that the emotions of the trial judge will be sensitive, nicely balanced, subject to his own scrutiny." Jerome Frank, "Justice and Emotions," in *Handbook for Judges* p. 53 (American Judicature Society 1984). Nevertheless, this Court in *Louk v. Haynes,* 159 W.Va. 482, 500, 223 S.E.2d 780, 791 (1976), emphasized that where there is temptation "not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself."

Rule 4.12 of the *Rules of Judicial Disciplinary Procedure* provide that the Supreme Court of Appeals "may impose any one or more of the following sanctions for a violation of the Code of Judicial Conduct: (1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to one year; (5) a fine of up to $5,000[.]" Specifically, Rule 4.12 states that a reprimand "constitutes a severe reproof to a judge who has engaged in conduct which violated the Code of Judicial Conduct."

With regard to Judge Starcher's alleged conduct toward Ms. Gutsell, Mr. Parker and their law firm on December 17, 1993, no evidence of any threat appears in the record. Nor does the record contain evidence that Judge Starcher before or after the meeting with Ms. Gutsell and Mr. Parker exhibited bias toward those attorneys or the law firm. The testimony indicates frustration by Judge Starcher with himself when he realized the import of the previous day's conversation with the assistant prosecuting attorney. The members of the Judicial Hearing Board were "much closer to the pulse of the hearing" concerning that issue, and we adopt the Board's recommendation to dismiss that aspect of the complaint with regard to Judge Starcher's conduct on December 17, 1993. *In the Matter of June Browning, supra* n. 4.

As discussed above, however, the December 16, 1993, *ex parte* communication of Judge Starcher with the assistant prosecuting attorney was more egregious than the communication in the *Kaufman* case. Upon all of the circumstances herein, this Court concludes that a reprimand, rather than the lesser sanction of admonishment, is warranted.

As a final note of importance, we wish to emphasize that this matter, although quite serious, is but a single episode in Judge Starcher's long and distinguished judicial career. The Morgantown area constitutes one of the busiest and most difficult circuits in West Virginia, and Judge Starcher has been a hard working judge in that circuit for more than seventeen years. His comments before the Judicial Hearing Board, that he works long hours and tackles complicated problems, were well spoken. It is commendable that Judge Starcher made a public admission and apology concerning the incident in question.

Upon all of the above, Judge Starcher is hereby reprimanded with regard to the *ex parte* communication of December 16, 1993.

Reprimand.

NEELY, Chief Justice, dissenting:

I dissent to this Court's substitution of a reprimand for an admonishment.

Larry V. Starcher has been one of the great West Virginia circuit judges in this century. He is enthusiastic, imaginative, dedicated, extraordinarily hard working, humane, liberally educated, and surpassingly intelligent. He made a mistake and, although I think that a quiet word from a senior partner at Spilman, Thomas and Battle would probably have been more effective than a full-blown donnybrook, because a formal complaint was filed he deserves an admonishment.

The big problem that the Judicial Hearing Board recognized is that all of the qualities that make a person a great judge—enthusiasm, creativity, boundless energy, concern, good training, and surpassing intelligence—are the exact qualities that roughly one in a hundred times causes a judge to step all over himself. But far better for the world that we be graced with a Larry Starcher on the bench who from time to time makes a mistake than some mindless twit who sits in his black robe behind the bench rocking insouciantly, simply happy as a pig in mud to get a regular check on the first and the fifteenth with a big pension at the end of a fairly short road.

In this State, judges get to be judges because they are political leaders. I have always been an inveterate supporter of elected judges and I wholeheartedly support our system of requiring judges to run in both partisan primaries and then in general elections. Happily few of our judges come to believe that they became judges as a consolation prize because the Swedes have not yet created a Nobel Prize in Law. Indeed, what distinguishes our elected judges from judges appointed by other methods, is our judges' knowledge of all strata of the society that they serve. Obviously, however, such knowledge implies an engagement with society that often leads to passionate convictions.

Judges should not communicate *ex parte* with prosecuting attorneys or other lawyers appearing before them. That point having been firmly established, hanging Judge Starcher out to dry does not benefit anyone; Judge Starcher is sufficiently popular in Monongalia County that he will be a judge until the day he voluntarily decides to retire or the Lord decides to call him home. Therefore, it is only good sense—a good sense demonstrated by the agreed order presented to us by the Judicial Hearing Board—that Judge Starcher's will to serve the public, his enthusiasm for creative innovation and his overall morale *not* be undermined by a gratuitous and unnecessary pounding.