475 S.E.2d 327

**In the Matter of Charles PHALEN, Jr., Family Law Master for Kanawha County.**

**No. 22942.**

Supreme Court of Appeals of West Virginia.

Submitted June 25, 1996.

Decided July 3, 1996.

Charles R. Garten, Charleston, Judicial Disciplinary Counsel.

Michael C. Allen, Allen & Allen, Charleston, for Respondent.

PER CURIAM.

This judicial disciplinary proceeding arises from a recommendation by the West Virginia Judicial Hearing Board that Charles Phalen, Jr., Family Law Master for Kanawha County, be reprimanded for violating several provisions of the West Virginia Code of Judicial Conduct. The violations concern *ex parte* communications with parties having a proceeding pending before the family law master.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this matter are not in dispute. In September of 1994, Mr. Phalen conducted a hearing on a petition to modify child support. During the hearing, the husband and wife mutually informed the family law master that the husband was suffering from multiple sclerosis and, as a consequence, his income had decreased drastically. The parties jointly agreed to and requested a reduction in child support payments due to the husband's illness and decrease in income. The record indicates an order was entered reflecting the agreement by the parties. However, before the order was communicated to the parties, Mr. Phalen engaged in *ex parte* communications with both parties. Mr. Phalen first telephoned the husband and arranged to visit his home for the purpose of informing him of a way in which he could earn extra income. Mr. Phalen then visited the home of the husband and attempted to get him to agree to become a sales representative for Amway.[1] The husband listened to the family law master but made no commitment to sell Amway products.[2] When the family law master left the husband's home, he left behind various Amway brochures and a cassette.[3] The family law master next telephoned the wife and attempted to gain her interest in selling Amway products. The wife, however, was resistant to the idea and would not allow the family law master to visit her home.

On February 2, 1995, the husband filed a complaint with the West Virginia Judicial Investigation Commission (Commission) alleging violations of the Code of Judicial Conduct against Mr. Phalen due to the conduct indicated herein. An investigation into the matter was conducted by the Commission. On June 15, 1995, a majority of the members of the Commission determined that probable cause existed for a complaint to be filed with the West Virginia Judicial Hearing Board (Board) charging Mr. Phalen with violating Canons 1, 2A, 2B, 3A, 3B(7), and 3B(11) of the Code of Judicial Conduct. The Board conducted an evidentiary hearing on this matter on November 3, 1995. At that proceeding, the Commission and the family law master entered into the record eleven stipulated facts, wherein the family law master conceded to engaging in the conduct alleged

---

1. The record indicates Mr. Phalen's wife accompanied him to the husband's home.

2. The parties in this matter stipulated several facts, among them was the following account of what the husband's testimony would have been:
   "4. Petitioner would testify that he had to allow Mr. Phalen to visit him since he had not yet received the order for a reduction in child support. Further, [p]etitioner would testify that he agreed to allow the Family Law Master and his wife to come to see him, but he knew that he was not interested in whatever Mr. Phalen proposed. Further, petitioner would testify that Mr. Phalen did not mention the hearing, the order, or anything about the petitioner's divorce; but that he felt he had to do what the Family Law Master wanted until he had the court order in his hand. He felt that the Family Law Master could change his mind and not give the request for reduction in child support."

3. A few days after the visit from the family law master, the husband received the child support modification order.

against him.[4]  On December 28, 1995, the Board filed its Recommended Findings of Fact, Conclusions of Law, and Proposed Disposition.  The Board concluded: (1) The family law master used information he obtained in a judicial hearing to attempt to promote his own personal financial gain, and (2) he did not promote public confidence in the integrity and impartiality of the judiciary by visiting the home of a litigant and attempting to have the litigant sell Amway products.[5]  The Board unanimously proposed that the family law master be reprimanded.  The brief of the Commission argues the evidence supports a finding that all the charged canons were violated and the reprimand sanction should be approved by this Court.  In his response brief, the family law master agrees he should be reprimanded but asserts his conduct only violated Canons 2 and 3B(11).

## II.

### DISCUSSION

We note at the outset that "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *In the Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985) (*Gorby II*).  *See In the Matter of Hey*, 192 W.Va. 221, 228, 452 S.E.2d 24, 31 (1994) ("[j]udicial disciplinary proceedings are subjects of the highest public concern").  In fulfilling this purpose, we require "that allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'" *In the Matter of Starcher*, 193 W.Va. 470, 473, 457 S.E.2d 147, 150 (1995), *quoting* Syl. pt. 1, *In the Matter of Hey, supra*; Syl. pt. 4, *In re Pauley*, 173 W.Va. 228, 314 S.E.2d 391

(1983).  This standard of proof is embodied in Rule 4.5 of the Rules of Judicial Disciplinary Procedure, which states: "In order to recommend the imposition of discipline on any judge, the allegations of the formal charge must be proved by clear and convincing evidence."  Of course, the findings of the Board are "'not binding on this Court.'" *Starcher*, 193 W.Va. at 473, 457 S.E.2d at 150, *quoting In the Matter of Browning*, 192 W.Va. 231, 234 n. 4, 452 S.E.2d 34, 37 n. 4 (1994).  Further, as we stated in Syllabus Point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980), it is the duty of this Court to "make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings."  See also *Browning*, 192 W.Va. at 234, 452 S.E.2d at 37, where we stated this Court has the "responsibility to review the record in this case de novo and determine if there is clear and convincing evidence to prove the allegations in the complaint."  With the above principles charting our course, we will proceed with a review of the facts of this case.

### A.

#### *Canon 1:*

#### *Upholding the Integrity and Independence of the Judiciary*

The first issue to be addressed is whether the evidence establishes that Mr. Phalen violated Canon 1. The essence of Canon 1 is the requirement that a judge uphold the integrity and independence of the judiciary.[6]  Mr. Phalen argues his conduct did not violate the "integrity and independence of the judiciary" for two reasons.  First, he notes the parties in the child support proceeding mutually agreed to a reduction in

---

4.  Additionally, it was brought out at the hearing that the family law master had engaged in such conduct with at least one other litigant who was before him.

5.  The Board's Conclusions of Law did not specify which canons the family law master violated.  However, the language used by the Board clearly indicates a determination that the family law master violated Canons 2A and 3B(11).

6.  Canon 1, in its entirety, provides:

"An independent and honorable judiciary is indispensable to justice in our society.  A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.  The provisions of this Code are to be construed and applied to further that objective."

child support payments; therefore, no controversy existed between the parties. Second, he contends the conduct complained of occurred after the order was entered by the circuit court; therefore, the proceeding itself was over.[7] Mr. Phalen's arguments display a misapprehension of the import assigned to the phrase "integrity and independence of the judiciary." Mr. Phalen's logic would allow every judge to engage in unlimited and unrestricted personal activities with litigants the moment a final order is entered or when litigants reach a settlement "mode."

■ We believe Canon 1 is far more potent and meaningful than Mr. Phalen would have it. No greater assault on the integrity and independence of the judiciary can be found than to have litigants exposed to judges soliciting them for whatever "fancy" judges might have. *See In the Matter of Hey*, 193 W.Va. 572, 457 S.E.2d 509 (1995) (sanctions imposed on judge for sexual harassment); *In the Matter of Mendez*, 192 W.Va. 57, 450 S.E.2d 646 (1994) (criminal and ethical sanctions imposed on magistrate for unlawful solicitation and acceptance of campaign funds); *In the Matter of Gainer*, 185 W.Va. 8, 404 S.E.2d 251 (1991) (ethical sanctions imposed on magistrate for sexual fondling of woman). We noted *In the Matter of Gorby*, 176 W.Va. 11, 14, 339 S.E.2d 697, 700 (*Gorby* I), *modified on other grounds*, 176 W.Va. 16, 339 S.E.2d 702 (1985):

"'"The office of judge is one in which the general public has a deep and vital interest, and, because that is true, the official conduct of judges, as well as their private conduct, is closely observed. When a judge, either in his official capacity or as a private citizen, is guilty of such conduct as to cause others to question his character ..., the people not only lose respect for him as a [person] but lose respect for the court over which he pre-

sides as well."'" *Quoting In re Haggerty*, 257 La. 1, 29, 241 So.2d 469, 478 (1970), *quoting Stanley v. Jones*, 201 La. 549, 562–563, 9 So.2d 678, 683 (1942).

■ Mr. Phalen's conduct, as reflected by the stipulated facts of this case, made a mockery of the integrity and independence of our judicial system. The husband sought legal redress from a previously entered child support order that had become unduly burdensome due to the negative effects of multiple sclerosis on his ability to work. The wife apparently understood the husband's debilitating circumstances and agreed not to oppose his efforts to obtain a reduction in child support payments. Mr. Phalen heard the evidence pertaining to the financial difficulties of the husband and submitted a recommendation to the circuit court. As far as the husband and wife were concerned, the income situation would be remedied by an order approving a reduction in child support payments. This was all they sought from the court. Mr. Phalen took unprecedented advantage of their situation by communicating with the litigants before the litigants were made aware of the outcome of their proceeding. The evidence is clear that, while the wife stood strong in rebuffing Mr. Phalen's Amway proposition, the husband was intimidated by the circumstances in which Mr. Phalen made his Amway pitch. The husband interpreted Mr. Phalen's communication to mean, in effect, that he had to become an Amway representative if he wanted a favorable court order. This truly unfortunate experience by the husband and wife with our legal system is distressing to this Court. The implications of Mr. Phalen's conduct directly attack and expose to ridicule the integrity and independence of the judiciary. The Commentary to Canon 1 states: "Deference to the judgments and rulings of courts depends upon public confidence in the integrity

---

7. Mr. Phalen is mistaken in believing that mere entry of the final order by the circuit court put an end to the litigation. First, it is not for this Court or Mr. Phalen as a family law master to assume that because the parties agreed to a reduction in child support payments, neither party would have a reason to appeal. The potential for appeal remained with the case until the expiration of the appeal period. Therefore, the case was fully in litigation at the time Mr. Phalen made his Amway overtures. Second, neither party to the litigation knew the circuit court had entered a final order. Only Mr. Phalen was aware of this fact. In the stipulated facts, the husband made it clear he only permitted Mr. Phalen to invade the privacy of his residence because he was afraid to say no to Mr. Phalen with the child support issue still in the balance. Indeed, the wife, who was accommodating the husband on the child support issue, rejected Mr. Phalen's offer.

and independence of judges." How much "deference" would the public extend to a judiciary that dispenses Amway recruits instead of justice? Mr. Phalen points out that he holds the position of family law master on a part-time basis. This point has no relevancy to egregious conduct that was inextricably linked to his official position as a family law master. While he may hold the position part time, the integrity and independence of the office of family law master is a full-time forum to the public. We touched upon this idea in *Gorby* I, 176 W.Va. at 14, 339 S.E.2d at 700, *quoting* Syl. pt. 7, *Matter of Bennett*, 403 Mich. 178, 267 N.W.2d 914 (1978), where it was said that: " '[A] judge, whether on or off the bench, is bound to strive toward creating and preserving the image of the justice system.... Achievement of this goal demands that a judge, in a sense, behave as though he is always on the bench.' "

## B.

### Canon 2A:

### Avoiding Impropriety and the Appearance of Impropriety

▆▆▆ We draw our attention next to Canon 2A. This canon requires that a judge avoid impropriety and the appearance of impropriety.[8] Mr. Phalen concedes in his brief that his conduct violated "Canon 2." This concession, of course, does not alter the duty of this Court in carrying out the task at hand. The Commentary to Canon 2A flushes out the broad demands of this provision in the following pertinent language:

"Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges.... A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

It is the height of irresponsibility and impropriety for a judicial officer to solicit litigants to sell Amway products or any other product. Mr. Phalen stood to gain financially from having the husband and wife become Amway representatives. The thrust of Amway's attractiveness to particular people, such as Mr. Phalen, is its pyramid-type scheme wherein a single individual benefits from the person he recruits, as well as from his recruit's recruits and so on down the pyramid. The financial stake Mr. Phalen held in this matter overshadows any financial gain the litigants might have obtained from accepting his proposal. As we stated succinctly in *In the Matter of Neely*, 178 W.Va. 722, 727, 364 S.E.2d 250, 255 (1987), "it is improper for a judge to take advantage of his position to reap a personal benefit—or even to appear to do so." The Open Courts Clause of Section 17 of Article III of the West Virginia Constitution[9] does not permit, as a condition to access to the courts, that litigants must help line the pockets of judicial officers by selling trinkets. In the Syllabus of *Neely, supra,* we held: "A judge or justice violates Canon 2A ... when he requires his secretary to care for his child as a condition of employment, because such action creates the appearance of impropriety and undermines public confidence in the judiciary." Mr. Phalen's pernicious arrangement, if left unchecked, would not merely "undermine" public confidence in the judiciary, it would "utterly destroy" such confidence.

## C.

### Canon 2B:

### Using the Prestige of Judicial Office to Advance Private Interests

The next issue we must consider concerns Canon 2B. The gist of this canon prohibits a judge from using the prestige of judicial of-

---

8. Canon 2A, in its entirety, provides: "A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

9. Section 17 of Article III provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

fice to advance private interests of the judge or others.[10] *See In the Matter of Boese*, 186 W.Va. 46, 410 S.E.2d 282 (1991) (ethical violation for magistrate to use her judicial position to threaten her ex-spouse). The evidence is clear that Mr. Phalen had a direct monetary interest in recruiting people to sell Amway products. The evidence is also equally clear that the litigants knew of Mr. Phalen only because of his position as a family law master. In other words, Mr. Phalen's unfortunate conduct was squarely centered on the prestige of his judicial office. Mr. Phalen's failure to inform either litigant that a decision had been entered into the record of their case irrefutably reveals that he was using the prestige of his judicial office to try and intimidate the litigants into becoming his Amway recruits. The Commentary to Canon 2B provides guidance here insofar as it admonishes that "[j]udges should distinguish between proper and improper use of the prestige of office in *all of their activities*." (Emphasis added.) Using the prestige of the office of family law master to recruit Amway "cogs" is categorically improper and intolerable. "It represents a fundamental abuse of power that seriously undermines public confidence in the integrity and impartiality of the judiciary." *Hey*, 193 W.Va. at 577, 457 S.E.2d at 515.

### D.

### *Canon 3A:*

### *Judicial Duties Take Precedence Over All Other Activities*

■ We now proceed to determine whether Canon 3A was violated by Mr. Phalen's conduct. Canon 3A requires judges to make their judicial duties a priority over all other activities.[11] Mr. Phalen contends his conduct did not violate this canon. The Commission argues to the contrary. It is the position of the Commission that the conduct of Mr. Phalen "evidenced the family law master's failure to place his judicial duties over all of his other activities." We disagree with the broad reach that the Commission wants to apply to this canon. Canon 3A represents a general statement regarding a judge's duty to make judicial affairs a priority. Specific germane matters are brought out in subsequent provisions of Canon 3. A review of past decisions instructs us that Canon 3A (and its equivalent under the Judicial Code of Ethics) never formed the basis of an independent violation by a judicial officer.[12] Rather, Canon 3A provides the basis for sanctions only when used in conjunction with other provisions of Canon 3. *See Browning, supra* (magistrate refused to cooperate in working out a schedule for the court with the chief magistrate); *In the Matter of Harshbarger*, 173 W.Va. 206, 314 S.E.2d 79 (1984) (magistrate left his post prior to the end of his scheduled shift at night court); *In the Matter of Osburn*, 173 W.Va. 381, 315 S.E.2d 640 (1984) (magistrate on duty remained at his home when a prisoner was brought to his office for arraignment). We do not believe the conduct of Mr. Phalen is ripe for finding an independent violation of Canon 3A. His conduct did not display an independent disregard for putting his judicial duties above private activities. Had there been evidence, for example, that Mr. Phalen cut short a judicial proceeding in order to visit the husband's home, then an independent implication of Canon 3A would be confronting us.

10. Canon 2B, in its entirety, provides:
    "A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness."

11. Canon 3A, in its entirety, provides: "The judicial duties of a judge take precedence over all the

judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the following standards apply."

12. The Code of Judicial Conduct became effective January 1, 1993. Prior to that time, the Judicial Code of Ethics governed judicial conduct. Under the Judicial Code of Ethics, the current Canon 3A was a non-enumerated preamble to Canon 3.

## E.

### *Canon 3B(7):*

### *Ex Parte Communications by a Judicial Officer Concerning Pending or Impending Proceeding*

We next look at whether Canon 3B(7) was violated by Mr. Phalen. This canon proscribes *ex parte* communications by a judicial officer concerning a pending or impending proceeding.[13] Mr. Phalen contends his conduct did not violate Canon 3B(7) because a final order had been entered in the child support case. We reject this argument for the reasons indicated in note 7, *supra* (the mere entry of the final order did not remove the case from its status as a pending matter because the governing appeal period was not elapsed). The Commission argues that Canon 3B(7) was violated even though the substance of the communication may not have related to the litigation itself. The Commission cites language from *In the Matter of Kaufman*, 187 W.Va. 166, 416 S.E.2d 480 (1992), to support its position that mere *ex parte* communications with a party (except for the enumerated exceptions contained in the canon), without regard to the substance of the communications, are prohibited by Canon 3B(7).

In *Kaufman* a circuit judge initiated a telephone call to a party involved in a proceeding pending before the circuit court. There was no dispute over the fact that the circuit judge initiated the telephone call. However, there was conflicting evidence regarding the substance of the telephone conversation. The circuit judge contended the conversation did not involve the merits of the pending litigation. The party contacted testified the conversation went to the heart of the pending litigation. This Court did not provide any analysis on the distinction between *ex parte* communications that do not touch upon the merits of a pending litigation versus *ex parte* communications that improperly address the merits of a pending case.

In unadorned and sweeping language, which the Commission seizes upon to support its position, we stated: "The very act of talking to one party without the presence of the other creates an *ex parte* situation." *Kaufman*, 187 W.Va. at 171, 416 S.E.2d at 485. This language standing alone does not support the position of the Commission that this Court should not be concerned with the nature of *ex parte* communications for the purpose of finding a violation of Canon 3B(7). Some support, however, for the Commission's position is found in Syllabus Point 2 of *Kaufman:* "The initiation of *ex parte* communications by a judge is strictly prohibited by Canon 3[B(7)] of the [Code of] Judicial [Conduct], 'except as authorized by law.'" This Syllabus Point has to be flushed out for future utility. In addition to the actual enumerated exceptions to the prohibition of *ex parte* communications found in Canon 3B(7), a nonenumerated qualification is embedded in the canon. The canon expressly states that *ex parte* communications "concerning" pending or impending litigation are prohibited. The use of the word "concerning" informs us that *ex parte* communication that "does not concern" pending or impending litigation is a nonenumerated exception to the canon's prohibition. "When the language of a canon under the [Code of] Judicial [Conduct] is clear and unambiguous, the plain meaning of the canon is to be accepted and followed without resorting to interpretation or construction." Syl. pt. 1, *In the Matter of Karr*, 182 W.Va. 221, 387 S.E.2d 126 (1989). With this point in mind, it, therefore, becomes important and necessary to analyze the content of Mr. Phalen's *ex parte* communications with the litigants.

Based upon the stipulated evidence in this case, it is clear that during Mr. Phalen's *ex parte* communications with both litigants he "did not mention the hearing, the order, or anything about the [litigants'] divorce." In other words, the evidence in this case shows Mr. Phalen only discussed selling Amway products with the litigants. The proceedings

---

**13.** Canon 3B(7) provides, in relevant part:

"A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding[.]"

 

the litigants were involved with "did not concern" Amway products. While the latter conclusion is sound, it does not end the inquiry. In the final analysis, the litigation itself involved decreased income by the husband, which translated into smaller child support payments to the wife. The essence of Mr. Phalen's *ex parte* communications with both litigants involved increasing their incomes. In other words, income was the heart of the litigation and income was the heart of the *ex parte* communications. Reducing the communications to this level leads to the conclusion that Mr. Phalen engaged in *ex parte* communications which indirectly concerned a pending proceeding.

## F.

### *Canon 3B(11):*

*Engaging in Business Inconsistent with Impartial Performance of Judicial Officer*

 The final charge against Mr. Phalen is that his conduct violated Canon 3B(11).[14] This canon provides: "A judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity." In his brief, Mr. Phalen indicates his conduct violated this canon. Pursuant to W.Va.Code, 48–2–27 (1994), all matters pertaining to domestic relations cases "are confidential and not open for public inspection[.]" The facts pertaining to the child support proceeding were confidential and nonpublic information. The evidence is clear that Mr. Phalen learned of the litigants' financial situation through the child support proceeding. This nonpublic information formed the basis of Mr. Phalen's conduct in approaching the litigants with a proposal to sell Amway products. Clearly, Mr. Phalen used nonpublic information for a personal reason that was unrelated to his judicial duties.

14. The Commission argues in its brief that Mr. Phalen's conduct violated W.Va.Code, 48A–4–2(c), which prohibits a family law master from "engag[ing] in any other business, occupation, or employment inconsistent with the expeditious,

## III.

## CONCLUSION

 For the forgoing reasons, we dismiss the specific charge and allegation concerning Canon 3A. However, we find the charges relating to Canons 1, 2A, 2B, 3B(7), and 3B(11) are supported by clear and convincing evidence. Accordingly, based upon these findings, we issue a public reprimand and order Mr. Phalen to pay the costs of the proceedings.

Public reprimand and costs.

proper, and impartial performance of his or her duties as a judicial officer." This specific allegation was not presented to the Board as part of the charged violations against Mr. Phalen and, therefore, is not properly before this Court.